UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Daryl Bocook,                                                              Case No. 3:16-cv-2291

        Plaintiff,

   v.                                                               MEMORANDUM OPINION
                                                                         AND ORDER

Gary Mohr, *et al.*,

        Defendant.

## I. Introduction

Defendant Brian Wittrup has filed a motion seeking summary judgment on Plaintiff Daryl Bocook's § 1983 First Amendment retaliation claim. (Doc. No. 77). Bocook filed a brief in opposition to Wittrup's motion, (Doc. No. 79), and Wittrup filed a brief in reply. (Doc. No. 80). For the reasons stated below, I grant Wittrup's motion.

## II. Background

The Ohio Department of Rehabilitation and Correction ("ODRC"), like most prison systems, assigns corrections officers and supervisors to Security Threat Group ("STG") investigations and intelligence collection efforts. In 2015, DJ Norris, an STG supervisor, recommended that Bocook remain classified at Security Level 4 due to Bocook's involvement within the leadership of the Aryan Brotherhood. (Doc. No. 77-1 at 2).

On September 14, 2016, Bocook filed suit, alleging his rights were violated by Wittrup (then the Chief of the Bureau of Classification and Reception for the ODRC), Mr. Coleman (the then-

Warden of the Toledo Correctional Institution, where Bocook then was incarcerated), and Gary Mohr (the then-Director of the ODRC), when they denied him a decrease in his security status from Security Level 4, a reduction for which he claims he qualified. (Doc. No. 1). Service subsequently was perfected on Wittrup on January 3, 2017. (Doc. No. 10 at 1-2).

Meanwhile, on October 8, 2016, a fight had broken out at the Warren Correctional Institution between four inmates affiliated with the Aryan Brotherhood. A week later, Bocook sent an email[1] to another inmate, asking what lead to the fight and giving instructions for what should happen to the two inmates who started the fight. (Doc. No. 77-4 at 6-8). The next day, Bocook sent another message, stating he had learned "an elder" had been jumped and directing the other inmate to disregard his instructions from the day before. (*Id.* at 9). Bocook signed off on both messages with the phrase "Lions forever," which, along with "elder," is commonly used by Aryan Brotherhood members. (*Id.* at 7, 9; Doc. No. 77 at 3-4).

Ryan Jones, an STG officer investigating Bocook's involvement in the Aryan Brotherhood, reviewed these and other communications from Bocook and concluded that Bocook was acting as a leader of the Aryan Brotherhood and directing group activities, including violence against members who stepped out of line. (*See* Doc. No. 77-5 at 115). Bocook had been placed in restrictive housing on November 14, 2016, at the Toledo Correctional Institution, for what officers described as a "disruptive" violation of ODRC Rule 17, Engaging in unauthorized group activities. (*Id.* at 12).

On December 15, 2016, Jones issued his recommendation that Bocook be charged with violating Rule 17 and for criminal and disruptive activities. (*Id.* at 115-16; Doc. No. 77-4 at 6). Bocook acknowledged receipt of the conduct report on December 16, 2016. (*Id.*). On January 5,

---

[1] ODRC inmates may utilize a system known as JPAY to send and receive emails, including with other inmates. (*See* Doc. No. 77 at 3).

2017, the Rule Infraction Board concluded Bocook had violated Rule 17. (Doc. No. 77-5 at 20). Bocook's appeal was denied. (*Id.* at 22).

On March 31, 2017, Wittrup approved Coleman's recommendation that Bocook be placed at Security Level 5 due to his continued activity in the Aryan Brotherhood at Security Level 4. (Doc. No. 77-5 at 2). Bocook's involvement in the Aryan Brotherhood continued, and Norris subsequently recommended to Wittrup and Ed Voorhies (ODRC's Managing Director of Operations) that Bocook "be transferred out of state as a means to stop his gang activities and prevent violence and disruption across ODRC institutions." (Doc. No. 77-1 at 2). This recommendation was forwarded to Mohr, who ordered that Bocook be transferred. (Doc. No. 77-2 at 2). Bocook was transferred into the custody of the Virginia Department of Corrections on June 21, 2017. (Doc. No. 78-1 at 3).

When he arrived in Virginia, Bocook denied ever having been a member or leader in the Aryan Brotherhood. (Doc. No. 77-3 at 15). But subsequently, on May 21, 2019, Bocook admitted he had been a member of the Aryan Brotherhood in Ohio since the 1980s and was previously the "number 2 man" in Ohio. (*Id.*).

On September 24, 2018, I dismissed Bocook's claims against Mohr and Coleman, granted him leave to amend to allege a First Amendment retaliation claim against Wittrup, and granted his motion for appointment of counsel. (Doc. No. 48). Bocook, through counsel, filed his amended complaint on March 4, 2019. (Doc. No. 55).

### III. STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's

3

favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the [record] . . . ,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (further citation omitted). The party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## IV. ANALYSIS

An inmate seeking to establish a First Amendment retaliation claim "must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action

4

was motivated at least in part by the [prisoner's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus–X v. Blatter,* 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)).

While the parties have offered thoughtful arguments as to all three elements of Bocook's retaliation claim, a discussion of the third element is sufficient to decide Wittrup's motion. This element requires Bocook to show Wittrup (the only remaining defendant) took an adverse action against him that was "motivated at least in part by the prisoner's protected conduct." *Hill*, 630 F.3d at 475.

Wittrup argues Bocook cannot show the reclassification and his eventual transfer was motivated by this litigation because the STG investigation began before Wittrup received notice of the lawsuit and because Wittrup did not initiate the investigation. (Doc. No. 77 at 11-12). Wittrup further argues that Bocook's "security increase and transfer was . . . the result of his own actions – namely acting as an Aryan Brotherhood leader and organizing violence and disruption amongst his fellow members." (*Id.* at 12).

Bocook acknowledges that Wittrup was not formally served with the original complaint "until January 3, 2017 – after the STG unit's investigation had concluded and Norris' recommendation issued in December 2016." (Doc. No. 79 at 7). But, Bocook contends, the "lawsuit was public record, and it is difficult to imagine that such a lawsuit filed by a current inmate went unnoticed for four months." (*Id.*).

Yet this "assumption," (*id.*), is not evidence. Wittrup denies knowing about this lawsuit prior to the conclusion of the investigation, (Doc. No. 77-2 at 3), and Bocook's disbelief of that claim is not sufficient to meet his burden of proof.

Nor has Bocook established a genuine question of material fact as to whether Wittrup's involvement with Bocook's reclassification and subsequent transfer was motivated by this litigation. Bocook relies on the temporal proximity between Wittrup's January 3, 2017 notice of this litigation

5

and the March 31, 2017 approval of the Level 5 recommendation. (Doc. No. 79 at 7). But the Sixth Circuit has been reluctant to conclude that evidence of temporal proximity alone can establish retaliatory motive, *Hill*, 630 F.3d at 476, and Bocook offers no other evidence. Further, even if temporal proximity was sufficient to meet Bocook's burden, Wittrup has established that Bocook would have had his security level increased and been transferred to another institution based upon his continued involvement in Aryan Brotherhood leadership after the conclusion of the 2016 investigation. *See id.* at 475 ("If the prisoner can show that the defendants' adverse action was at least partially motivated by the prisoner's protected conduct, then the burden shifts to the defendants to show that they would have taken the same action even absent such protected conduct.").

Wittrup met his burden of demonstrating the absence of evidence to support the required third element of Bocook's claim, and Bocook has not identified "specific facts, supported by evidence," from which a jury could conclude Wittrup's approval of Bocook's reclassification and his participation in Bocook's subsequent transfer was motivated by his filing of this lawsuit. *Harris*, 201 F.3d at 803. Therefore, I conclude Wittrup is entitled to summary judgment on Bocook's retaliation claim.

## V. Conclusion

For the reasons stated above, I grant Wittrup's motion for summary judgment. (Doc. No. 77).

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge